UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KANDIE ANN MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24 CV 420 RWS |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Kandie Ann Miller brings this action seeking judicial review of the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401. Section 205(g) of the Act, 42 U.S.C. §§ 405(g), provides for judicial review of a final decision of the Commissioner. Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision of the Commissioner.

### **Procedural History**

Plaintiff was born in 1969 and protectively filed her application on June 29, 2021. (Tr. 17.) She alleges she became disabled beginning December 18, 2020, because of lupus, seizures, chronic fatigue, atrial fibrillation, fibromyalgia, and chronic pain. (Tr. 211.)

Plaintiff's application was initially denied on September 29, 2021, and upon reconsideration on December 20, 2021. (Tr. 88, 103.) After a telephonic hearing before an ALJ on January 11, 2023, the ALJ issued a decision denying benefits on April 5, 2023. (Tr. 37-64, 17-31.) On January 22, 2024, the Appeals Council denied plaintiff's request for review. (Tr. 1-6.) The ALJ's decision is now the final decision of the Commissioner.

In this action for judicial review, plaintiff contends that the ALJ improperly considered her non-severe mental impairments when determining that she could perform her past relevant work as a sleep technician and medical assistant. She asks that I reverse the Commissioner's final decision and remand the matter for further evaluation. For the reasons that follow, I will affirm the Commissioner's decision.

**Medical Records and Other Evidence Before the ALJ**

With respect to the medical records and other evidence of record, I adopt plaintiff's recitation of facts (ECF #8-1) only to the extent they are admitted by the Commissioner (ECF #9-1). I find the Commissioner's clarifications of plaintiff's statement of facts to be supported by the record, so I adopt his version of those facts (ECF #9-1). Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A.    <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must prove that she is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  At Step 1 of the process, the Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, at Step 2 the Commissioner decides whether the claimant has a "severe" impairment or

3

combination of impairments, meaning that which significantly limits her ability to do basic work activities.  If the claimant's impairment(s) is not severe, then she is not disabled.  At Step 3, the Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled.  At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform her past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy.  If so, the claimant is found not disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis.  If she meets this burden and shows that she is unable to perform her past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational factors such as age, education, and work experience.  *Phillips v. Astrue*, 671 F.3d

4

699, 702 (8th Cir. 2012).  If the claimant has non-exertional limitations, the Commissioner may satisfy his burden at Step 5 through the testimony of a vocational expert.  *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  "[Substantial evidence] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted).  Determining whether there is substantial evidence requires scrutinizing analysis.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision.  *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision

merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider whether a claimant's subjective complaints are consistent with the medical evidence. *See Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (listing factors such as the claimant's daily activities, the duration, frequency, and intensity of the pain, precipitating and aggravating factors, dosage, effectiveness and side effects of medication, and functional restrictions).[1] When an ALJ gives good reasons for the findings, the court will usually defer to the ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696

---

[1] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character. However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." *See* SSR 16-3p, 2017 WL 5180304, at *8 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

(8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

B.    ALJ's Decision

In her written decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 18, 2020.  (Tr. 19.)  The ALJ found that plaintiff had the following severe impairments: lupus, epilepsy, migraines, fibromyalgia, and history of atrial fibrillation.  (Tr. 19.)  The ALJ found that plaintiff had the following non-severe impairments: bursitis of the left shoulder, hypertension, anemia, substance abuse (alcohol), depressive disorder, and anxiety disorder.  (Tr. 20.)  In finding plaintiff's mental impairments to be non-severe, the ALJ concluded that plaintiff had "mild" limitations in the four areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  (Tr. 20-21.)  The ALJ determined that plaintiff's impairments or combination of impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 22-24.)  The ALJ found plaintiff to have the residual functional capacity (RFC) to perform light work with the following limitations:

> [T]he claimant can occasionally climb ramps or stairs, but she should avoid climbing ladders, ropes, or scaffolds. The claimant can occasionally balance. She can occasionally stoop, kneel, crouch, and crawl. The claimant should avoid extreme cold, extreme heat, vibrations, and hazards, such as unprotected heights and handling hazardous machinery. She should avoid concentrated fumes, odors, gases, dusts, and poor ventilation and should avoid work that requires operating motor vehicles. The claimant can frequently handle and finger with the bilateral upper extremities.

(Tr. at 25).

The ALJ relied upon vocational expert testimony to support a conclusion that that plaintiff could perform her past relevant work as a sleep technician (DOT#078.362-042, medium, performed light, semi-skilled, SVP-4), as she performed it and past relevant work as a medical assistant (DOT#079.362-010, light, skilled, SVP-6). (Tr. 30.) The ALJ concluded that "this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 30.) The ALJ therefore found plaintiff not to be disabled. (Tr. 31.)

C.   Evaluation of Non-Severe Mental Impairments When Determining RFC

Plaintiff makes one argument in support of remand: that the ALJ committed legal error because, although she found her medically determinable mental impairments not severe at Step 2, the ALJ determined plaintiff had mild impairments in each of the four broad mental function areas, and yet, assessed no mental limitations in her RFC. Notably, plaintiff does not argue that finding her

mental impairments to be non-severe at Step 2 was error; rather, she contends that the ALJ erred because she failed to consider the impact of her non-severe mental impairments on her ability to perform her past work as a sleep technician and medical assistant. Therefore, plaintiff contends that the ALJ failed to appropriately evaluate her mental limitations before finding she could perform her past relevant work.

At Step 2, the ALJ found that plaintiff's anxiety and depression did not cause more than a minimal limitation in plaintiff's ability to perform basic mental work activities and therefore were non-severe impairments. (Tr. 20-21.) When evaluating the severity of a claimant's mental impairments, an ALJ must first "evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). The ALJ "then rate[s] the degree of functional limitation resulting from the impairment(s)" in four broad functional areas known as the "Paragraph B" criteria. *See* § 404.1520a(b)(2). As correctly noted by the ALJ, the criteria are as follows: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). The ALJ rates the criteria using a five-point scale of none, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 404.1520(c)(4). If the ALJ rates the claimant's mental impairments as

9

"none" or "mild," then the ALJ will generally conclude that the mental impairments are non-severe, unless the evidence indicates there is more than a minimal limitation in the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520a(d)(1). This evaluation, known as the psychiatric review technique (PRT), is used when evaluating the severity of mental impairments at Step 2 and in determining whether the impairments are listed at Step 3. *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013).

If a claimant's impairments do not meet or equal one of the listed impairments, the ALJ must determine whether the claimant retains the RFC to perform her past relevant work. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (cleaned up). RFC is defined as the most a claimant can do despite her physical and mental limitations. *Hensley v. Colvin*, 829 F.3d 926, 931 (8th Cir. 2016). An ALJ must consider all of plaintiff's impairments (including those that are non-severe) in the RFC formulation. *Igo v. Colvin*, 839 F.3d 724, 730 (8th Cir. 2016).

The PRT for the assessment of mental impairments must be consistent with the ALJ's RFC determination. *See Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018). ("As a general proposition, this assertion is unobjectionable and correct."). "As a practical matter, however, the different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential

10

standard of review precludes us from labeling findings as inconsistent if they can be harmonized." *Id.* (cleaned up).

Here, at Step 2, the ALJ found plaintiff had a mild limitation in each of the four paragraph B criteria. (Tr. 20-21.)  In her analysis, the ALJ noted that plaintiff's daily activities, numerous normal mental status examinations, consultative examination, and her ability to get along with others indicated no more than "mild" limitations, and as the evidence did not otherwise indicate more than a minimal limitation in the claimant's ability to do basic work activities, resulted in a finding of non-severe mental impairments.  (Tr. 21.)

The ALJ went on to fashion an RFC which did not contain any mental limitations.  (Tr. 25.)  Plaintiff argues that finding her mental impairments non-severe does not speak to her capacity for the heightened mental abilities necessary for her past relevant work.

Here, because the ALJ found plaintiff's depression and anxiety cause mild limitations in her ability to perform basic mental work activities, she was required to consider these non-severe impairments when determining plaintiff's RFC. *Mabry v. Colvin*, 815 F.3d 386, 390 8th Cir. 2016).   The ALJ did so.  She expressly considered plaintiff's mental impairments in determining the RFC.  (Tr. 25-30.)  At the outset, the ALJ acknowledged her duty to consider all medically determinable physical and mental impairments in assessing the RFC.  (Tr. 25.)

The ALJ noted the impairments plaintiff alleged with her application, which did not include any mental impairments.  (Tr. 25, 211.)  *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) ("The fact that [plaintiff] did not allege depression in her application for disability benefits is significant, even if the evidence of depression was later developed.")  During her consultative examination with Thomas Spencer, Psy.D., on August 19, 2021, plaintiff repeatedly stated that she did not want to see a behavioral health professional, she denied ever seeing a behavioral health professional, and she refused to say she was depressed.  She attributed her anxiety to her seizures and loss of interest to her pain, and stated that she was "worked up" because she had to see a psychologist and "not very happy to be there."  (Tr. 508-10.)

The ALJ also discussed plaintiff's Function Report and her testimony that she had trouble focusing and concentrating primarily because of pain, not mental impairments. (Tr. 20-21, 25-26, 42-55, 226-33, 509.)  The ALJ also considered the objective findings of plaintiff's providers, which noted consistently normal mental status examinations with only occasional depression and anxiety.[2]

---

[2] On October 2, 2020, physical examination by Michael D. Synder, M.D., revealed that plaintiff was alert and oriented x3, with normal attention and concentration, fluent speech, intact comprehension, and normal recent and remote memory.  (Tr. 330.)  During her next office visit with Dr. Synder on November 5, 2020, plaintiff was observed to be "alert and oriented x3" with fluent speech.  (Tr. 325.)

During her visit with Siri Kolli, M.D., on October 23, 2020 (prior to her onset date), plaintiff reported being stressed because of work and headaches which caused a lack of focus.  She

---

reported intermittent depression.  (Tr. 460.)  Examination yielded normal results, including normal memory, judgment, and insight, appropriate mood and affect, and full orientation to time, place, person, and situation.  (Tr. 463.)  At her December 11, 2020, telehealth appointment, plaintiff reported increased anxiety because her seizures made her afraid to do things.  (Tr. 457.) Dr. Kolli reassured her about her condition being treated with medication and told her that she was ok to drive, and plaintiff reported "feeling ok about it now."  (Tr. 457.)   Mental status examination was normal.  (Tr. 458.)

Plaintiff appeared anxious at her next appointment with Dr. Kolli's Nurse Practitioner on March 4, 2021.  (Tr. 455.)  Her recurrent major depressive disorder was noted to be "in full remission." (Tr. 452.)  Plaintiff was on duloxetine but stated she did not feel like it was helping and reported being stressed and a "nervous wreck."  (Tr. 452.)  Mental status exam was normal.  (Tr. 455.) The Nurse Practitioner added mirtazapine to treat anxiety and advised plaintiff to come back in four weeks.  (Tr. 450.)  At her April 1, 2021, follow-up appointment with Dr. Kolli's Nurse Practitioner, plaintiff reported feeling depressed about being overweight.  (Tr. 443.)  She was observed to be anxious with inappropriate mood and depressed affect, feelings of hopelessness, and poor insight.  (Tr. 448.)  Her medication was changed from mirtazapine to Trintellix and she was counselled about weight management.  (Tr. 442.)  Plaintiff came back two weeks later and stated that she wanted labs because she "is bitchy," gaining weight, and "drinking 176 cups of chamomile tea daily" because she is "dying of thirst all the time."  (Tr. 438.)  Plaintiff did not fill her prescription for Trintellix because of cost.  (Tr. 438.)  Labs were ordered and she was advised to start counselling for her depression.  (Tr. 436.)   Her mental status examination yielded normal results.  (Tr. 441.)

 On May 14, 2021, plaintiff saw Siri Kolli, M.D., to "discuss anxiety," but her only complaint was that she irritable due to pain.  (Tr. 431.)  Her physical examination yielded normal results, including normal memory, full orientation to time, place, person, and situation, appropriate mood and affect, and normal insight and judgment.  (Tr. 434-35.)  On June 10, 2021, Dr, Kolli observed plaintiff to have normal memory, and she was oriented to time, place, person, and situation, with appropriate mood and affect, normal insight, and normal judgment.  (Tr. 429.)  By her September, 2021, follow up with Dr. Kolli, plaintiff no longer reported anxiety or depression and her mental status examination was normal.  (Tr. 615.)  However, at her October 20, 2021, visit with Dr. Kolli, plaintiff reported little interest in activities, some depression and feelings of hopelessness, and sleeplessness.  (Tr. 618.)  She was prescribed trazedone.  (Tr. 616.)  Plaintiff's mental status examination was within normal limits.  (Tr. 621.)  Plaintiff returned to Dr. Kolli's office five days letter stating her lawyer "wants her to get a letter from [Dr. Kolli] stating that she is unable to work due to her medical issues."  (Tr. 622.)  Her mental status examination was again normal.  (Tr. 625.)  At plaintiff's December 8, 2021, appointment, Dr. Kolli noted a 20 pound weight loss.  (Tr. 627.)  Plaintiff reported pain, fatigue, and staring off into space.  (Tr. 627.)  Dr. Kolli noted that plaintiff's seizure disorder could be due to alcohol withdrawal.  (Tr. 628.)  Plaintiff's mental status examination was again within normal limits.  (Tr. 630.)

13

In fashioning plaintiff's RFC, the ALJ also discussed and relied upon the opinion of consultative psychological examiner Dr. Spencer.  During examination, plaintiff had fair eye contact, her speech was within normal limits, she was cooperative, and her insight and judgment were intact.  (Tr. 510.)  Plaintiff's affect was neutral, she was alert and oriented to time, place, person, and event, she had intact concentration and average intelligence, but she was unable to recall three objects after five minutes of distraction.  (Tr. 510.)  Based on his examination, Dr. Spencer opined that plaintiff had mild impairment in her ability to learn, recall, and use information, and to consistently stay on task, as well as a mild impairment in her ability to relate to and work with others on a consistent basis.  (Tr. 510.)  The ALJ found Dr. Spencer's opinion persuasive as consistent with his examination results and the opinions of the state disability reviewing psychologists.  (Tr. 29.)

The ALL also expressly considered and found persuasive the prior administrative medical findings of Mark Altomari, Ph.D., and Barbara Markway, Ph.D., both of whom concluded that plaintiff had non-severe mental impairments which did not significantly impede her ability to function on a sustained basis.  (Tr. 69, 80.)

After consideration of all this evidence, the ALJ determined that the record evidence did not warrant the inclusion of mental limitations in the RFC.  In doing so, she did not substantially err.  The fact that the ALJ concluded for purposes of

Step 2 that plaintiff's mental impairments were "mild" does not mean that the RFC **must** include mental functioning limitations. *Kelly T. v. Kijakazi*, Case No. 20CV1915 WMW/DTS, 2022 WL 507609, at *4 (D. Minn. Jan. 26, 2022), report and recommendation adopted, Case No. 20CV1915 WMW/DTS, 2022 WL 507390 (D. Minn. Feb. 18, 2022*).*  Rather, it simply requires the ALJ to assess these non-severe mental impairments in the context of determining an appropriate RFC. Here, the ALJ's findings in Step 2 can be harmonized with the ALJ's analysis in Step 4 as the ALJ found mild limitations in Step 2 and went on to consider those limitations in Step 4, ultimately concluding that plaintiff retained the ability to perform work within the parameters of the RFC. *See Chismarich*, 888 F.3d at 980.

Because the ALJ considered plaintiff's mild limitations in determining the RFC and the record as a whole supports the ALJ's conclusion that plaintiff's non-severe mental impairments did not prevent her from performing light work tailored to her credible limitations, the ALJ did not err in omitting non-exertional limitations from the RFC.  "Mild limitations identified at Step Two using the PRT do not require corresponding RFC limitations." *Wymer v. Saul,* Case No. 4:19CV2616 MTS, 2021 WL 1889870, at *9 (E.D. Mo. May 11, 2021) (cleaned up); *see also Taylor v. Berryhill*, Case No. 4:17CV1050 DGK/SSA, 2018 WL 5410977, at *2-3 (W.D. Mo. Oct. 29, 2018) (rejecting the argument that the "ALJ erred by failing to incorporate the mild limitations in the [psychiatric review

technique] analysis from Steps Two and Three into mental limitations on his RFC at Step Four" and explaining the differences between the use of the PRT at Steps 2 and 3 and the function of the RFC assessment at Step 4); *Johnson v. Berryhill*, Case No. 4:17CV416 DGK/SSA, 2018 WL 2336297, at *2 (W.D. Mo. May 23, 2018); *Browning v. Colvin*, Case No. 13CV266 REL, 2014 WL 4829534, at *37 (W.D. Mo. Sept. 29, 2014) ("While it is true that the ALJ did not include his finding of plaintiff's mild difficulties in concentration, persistence, and pace in the assessment, there was no requirement that he do so.  Mild limitations in any of the four domains of mental functioning are non-severe and therefore by definition cause no work-related limitations of function.") (cleaned up); *Crissey v. Saul*, Case No. 4:20CV476 WJE, 2021 WL 2624514, at *3-4 (W.D. Mo. June 25, 2021).

The absence of mental health limitations in the RFC does not demonstrate that the ALJ failed to evaluate those limitations, but instead indicates that she concluded that those mild limitations did not ultimately impact plaintiff's RFC determination.

Although plaintiff argues that she could not perform her past relevant work as a sleep technician and medical assistant because these jobs require mental abilities exceeding her RFC, she presented no evidence in support of this contention despite the fact that she bears the burden to show that she cannot

perform past relevant work at Step 4.  *See Sloan v. Saul*, 933 F.3d 946, 950 (8th Cir. 2019) (cleaned up).

At Step 4, the ALJ must find the claimant "not disabled" if she can perform any of her past relevant work either as performed or as generally performed in the national economy.  To determine whether a claimant can perform her past relevant work, the ALJ must compare the claimant's RFC with the demands of her prior work.  20 C.F.R. § 404.1520(f).  If the ALJ determines the claimant can perform her past relevant work, the claimant is not disabled.  *See id.*  In making this determination, an "ALJ has a duty to fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before the ALJ determines that she is able to perform her past relevant work."  *Nimick v. Sec'y of Health & Human Servs.,* 887 F.2d 864, 866 (8th Cir. 1989) (cleaned up).

Here, the ALJ fulfilled this duty, and substantial evidence on the record as a whole supports the ALJ's decision that plaintiff could perform past relevant work.  In determining whether plaintiff could return to her past relevant work as generally or actually performed, the ALJ questioned plaintiff about her past relevant work and then considered the testimony of a VE, consistent with the *Dictionary of Occupational Titles* ("DOT").  (Tr. 30-31, 58-64.)  The VE testified that plaintiff's past relevant work was as a sleep technician (DOT code 078.362-042), classified

as semi-skilled, medium work (SVP-4) and performed at the light work category, and medical assistant (DOT code 079.362-010), classified as skilled light work (SVP 6) under the DOT.[3]  (Tr. 58.)  The VE further testified that a hypothetical person with plaintiff's age, education, work experience, and RFC could perform both jobs as actually performed, and the medical assistant job as generally performed.  (Tr. 60.)  The VE's testimony provides substantial evidence supporting the ALJ's determination that plaintiff could perform her past relevant work.  *See Schwandt v. Berryhill*, 926 F.3d 1004, 1013 (8th Cir. 2019) (holding that a VE's answer to a properly phrased hypothetical supplies substantial evidence supporting a determination that a claimant can perform past relevant work).

---

[3] Jobs with an SVP are semi-skilled, while jobs with an SVP of 6 are skilled.  SSR 00-4P, 2000 WL 1898704, at *3 (S.S.A. Dec. 4, 2000).

"Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."  20 C.F.R § 404.1568(b).

"Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity."  20 C.F.R § 404.1568(c).

The ALJ specifically identified the DOT job titles as testified to by the VE, along with the exertional levels of the jobs as actually and generally performed, the skill levels, and the SVPs, and them compared them with the DOT to "determine that the VE's testimony is consistent with the information in the DOT." (Tr. 30.) (cleaned up). She then expressly "compared the claimant's residual functional capacity with the physical *and mental* demands of this (past) work" and concluded that plaintiff was able to perform her past relevant work. (Tr. 31.) (cleaned up).

Here, the ALJ expressly and adequately considered the mental and physical demands of plaintiff's past relevant work when determining, with the assistance of VE testimony, that plaintiff could still perform her jobs of medical assistant as actually and generally performed and sleep technician as actually performed. *See Biggers v. Kijakazi*, 2023 WL 6066590, at *7 (W.D. Ark. Sept. 18, 2023) (ALJ adequately discharged duty at Step 4 in concluding plaintiff could perform past relevant work by questioning plaintiff about demands of the job, questioning a VE who identified the DOT job descriptions, comparing the VE's testimony with the DOT, and then comparing the demands of the work with what plaintiff is capable of doing). In so doing, the ALJ sufficiently discharged her duty at Step 4 and did not commit legal error requiring remand. *See Young v. Astrue*, 702 F.3d 489, 491 (8th Cir. 2013) ("We reject plaintiff's contention to the extent she alleges the ALJ failed to make explicit findings regarding the mental and physical demands of the

plaintiff's past relevant work as a factory packer and assembler. The ALJ may discharge this duty by referring to the specific job descriptions in the DOT that are associated with the claimant's past work.") (cleaned up).

## Conclusion

The question for the Court is whether the ALJ's findings are supported by "substantial evidence on the record as a whole and not based on any legal error." *See Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the ALJ's conclusion." *Id.* (cleaned up). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *See Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (cleaned up).

For the reasons set out above, the ALJ did not commit legal error in determining that plaintiff was capable of performing her past relevant work, and a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff was not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Kandie Ann Miller's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 4th day of October, 2024.